IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| THOMAS & BETTS INTERNATIONAL LLC and THOMAS & BETTS CORPORATION, | Civil Action No. _____ |
| Plaintiffs, | JURY TRIAL DEMANDED |
| -vs.- | |
| BURNDY LLC, HUBBELL INC., 3M COMPANY and ZHEJIANG SHANGYU CITY FENGFAN ELECTRICAL FITTINGS CO. LTD. | |
| Defendants. | |

## COMPLAINT

For its Complaint against Defendants Burndy LLC ("Burndy"), Hubbell Inc. ("Hubbell"), 3M Company ("3M") and Zhejiang Shangyu City Fengfan Electrical Fittings Co. Ltd. ("Fengfan") (collectively "Defendants"), Thomas & Betts International LLC ("TBI") and Thomas & Betts Corporation ("TBC") (collectively "Thomas & Betts") allege as follows:

**Nature of Action**

1.      This is an action for unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), and for deceptive trade practices and fraudulent misrepresentation under Tennessee Code Ann. § 47-18-104 et seq.

2.      This action results from: 1) Defendants' unauthorized use of TBI's unique oval-head cable tie trade dress in connection with their two-piece cable ties; and 2) Burndy's and Hubbell's false and misleading statements regarding their white/natural cable ties being ultraviolet (UV) resistant.

**The Parties**

3. Plaintiff TBC is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business in Memphis, Tennessee.

4. Plaintiff TBI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware. TBI is a wholly-owned subsidiary of TBC.

5. Upon information and belief, Defendant Burndy is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Manchester, New Hampshire.

6. Upon information and belief, Defendant Hubbell is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Shelton, Connecticut. Upon information and belief, Burndy is a wholly-owned subsidiary of Hubbell.

7. Upon information and belief, Defendant 3M is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in St. Paul, Minnesota.

8. Upon information and belief, Defendant Fengfan is a corporation organized and existing under the laws of the China, with its principal place of business in Shangyu, Zhejiang, China.

**Jurisdiction and Venue**

9. This Court has subject matter jurisdiction over Thomas & Betts's federal claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over Thomas & Betts's related state law claim under 28 U.S.C. § 1338(b) and the doctrine of

supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Venue is proper in this district under 28 U.S.C. § 1391 because the claims arose in this district and a substantial part of the events giving rise to the claims occurred in this district.

10. Upon information and belief, Defendant Fengfan sells the cable ties at issue in this litigation to defendants Hubbell, Burndy, and 3M with the expectation that they will be purchased directly by consumers in this District.

11. Upon information and belief, Defendant Fengfan advertises and sells cable ties to consumers in this District via the internet, including through Alibaba at the following fully interactive internet sites:

- http://syfengfan.en.alibaba.com/product/268116142201654154/Stainless_Steel_Barb_Nylon_Cable_Tie.html
- http://www.alibaba.com/product-gs/234427750/Stainless_Steel_Barb_Nylon_Cable_Tie.html.

A copy of the materials found at the above-referenced internet sites is attached as Exhibit A.

12. Upon information and belief, Defendants Hubbell, Burndy, and 3M advertise and sell the cable ties at issue in this litigation to consumers in this District, either directly or indirectly through distributors.

### Thomas & Betts and the Oval-Head Cable Tie Trade Dress

13. Thomas & Betts is a world leader in providing, among other things, products for commercial and industrial construction, industrial plant maintenance, repair and operation, electrical utility distribution, and original equipment manufacturing.  Thomas & Betts offers one of the broadest product lines in the electrical industry, supplying over 70 percent of the products used in a typical electrical application. More than 6,000 electrical, industrial, specialty, and retail distributors stock and sell Thomas & Betts products in their communities.

14. Thomas & Betts's electrical products business includes the manufacture and sale of "cable ties" for fastening, hanging or harnessing cables, wires, and similar products.  Thomas

& Betts offers one of the industry's broadest range of products for bundling, securing, routing and protecting wire and cable.

15.     Among these products is Thomas & Betts's two-piece Ty-Rap® cable ties, which are highly regarded within the industry based on their exceptional durability, strength, stainless steel locking mechanism, and nearly infinite number of locking positions.

16.     Thomas & Betts has been and continues to be a leading innovator in the field of cable ties.  In the late 1950s, TBC invented, patented, and manufactured two of the first cable ties — a "twist-locking" cable tie and a "self-clinching" cable tie, which replaced nylon string ties and lacing cord for harnessing cable. The twist-locking cable tie includes an integrally formed head with a horizontal opening and body. To secure this cable tie, the body is inserted into the horizontal opening of the head and a tool is used to twist the body against the head. *See* Exhibit B. The self-clinching cable tie had the same structure as the twist-locking cable tie, but it also included a metal spring clip which snaps over the head of a twist-locking cable tie to facilitate the automatic securement of the cable tie upon insertion of the body into the head.  *See* Exhibit C.

17.     Subsequently, TBC continued to add innovative products to its line of cable ties. Among such products was a so-called "two-piece self-locking" or "barbed" cable tie, which TBC began to market in late 1962.  This two-piece self-locking or barbed cable tie consists of an integrally formed head with a horizontal opening and body, and a separate metal locking device (a "barb") disposed in the horizontal opening in the head to prevent withdrawal of the body from the head. *See* Exhibit D.

18.     Since late 1962, Thomas & Betts's two-piece cable ties have been distinctive in appearance.  Specifically, Thomas & Betts's cable ties have included and currently include a

head having a uniquely oval shape (The "Oval-Head Trade Dress").  This oval-head design is non-functional and is not necessary for others to compete with Thomas & Betts.  An illustration of Thomas & Betts's cable tie with the Oval-Head Trade Dress is provided below:



19. After developing the oval-head cable tie configuration, TBC assigned its rights to the Oval-Head Trade Dress to TBI, and TBI granted a license back to TBC to use such Oval-Head Trade Dress.  Since that time, TBI has always controlled and maintained the quality of the cable tie products which utilize the Oval-Head Trade Dress, thus ensuring a consistent level of quality.

20. Over the last 50 years, Thomas & Betts has invested considerable amounts of time, money, and effort in advertising, promoting, and marketing its cable ties to establish in the minds of consumers an association between the Oval-Head Trade Dress and high quality ties offered by Thomas & Betts.  The Oval-Head Trade Dress has been printed on a variety of materials, such as brochures, pamphlets, packaging, advertising and other promotional materials.  Examples of such use are attached at Exhibit E.  Thomas & Betts's advertising has emphasized the Oval-Head Trade Dress of the Ty-Rap® cable ties by, among other things, asking consumers to "Look for the oval head."  *See* Exhibit F.  As a result of the advertising and sales activities directed to their oval-head cable ties, Thomas & Betts now enjoys an enormous wealth of goodwill and consumer recognition associated with the Oval-Head Trade Dress.

21. By reason of this extensive use and promotion, TBI's Oval-Head Trade Dress has become favorably known among consumers as used in connection with Thomas & Betts's cable ties and has become a valuable asset as a symbol of Thomas & Betts, its quality cable ties, and its goodwill.

22. Over the years, Thomas & Betts has aggressively enforced its Oval-Head Trade Dress in the U.S., and indeed, throughout the world.  As a result of these efforts, Thomas & Betts has been successful in maintaining its exclusive rights to this trade dress in these markets.

23. Thomas & Betts has taken steps to protect the Oval-Head Trade Dress in connection with its cable tie products, including filing a federal trademark application in the U.S. Patent and Trademark Office ("USTPO") as set forth below.

| Trademark | Appl. Ser. No. | Filing Date | Goods |
|---|---|---|---|
| [oval-head cable tie drawing] | 86/128,591 | November 25, 2013 | Cable ties, namely, bundling straps for wrapping groups of cables or other articles together in International Class 22

First Use in Commerce: December 31, 1962 |

A printout from the USPTO website listing the details of Oval-Head Trade Dress application is attached as Exhibit G.

### Defendants' Acts

24. Notwithstanding TBI's prior rights to the Oval-Head Trade Dress, Defendants Burndy, Hubbell, and Fengfan began manufacturing and selling UNIRAP-branded cable ties utilizing an oval-head configuration nearly identical to Thomas & Betts's Oval-Head Trade

Dress.  *See* Exhibit H.  A photo illustrating Defendants' Burndy, Hubbell, and Fengfan's UNIRAP cable tie head design is provided below:



25. Upon information and belief, Defendants' Burndy, Hubbell, and Fengfan's adoption and use of the oval-head configuration in connection with its cable ties began in late 2012, approximately 50 years after Thomas & Betts first adopted the Oval-Head Trade Dress.

26. Upon information and belief, Fengfan manufactures and sells to Burndy and Hubbell the oval-head cable ties that Burndy and Hubbell then promote and sell under the UNIRAP brand.

27. Notwithstanding TBI's prior rights to the Oval-Head Trade Dress, Defendant 3M began manufacturing and selling 3M™ Steel-Barbed Cable Ties utilizing an oval-head configuration nearly identical to Thomas & Betts's Oval-Head Trade Dress.  *See* Exhibit I (found at http://news.3m.com/press-release/company/steel-barbed-cable-ties-3m-provide-strong-reliable-fastening).  A photo illustrating Defendant 3M's 3M™ Steel-Barbed Cable Tie design is provided below:



28. Upon information and belief, Defendant 3M's adoption and use of the oval-head configuration in connection with its cable ties began in early 2014, approximately 50 years after Thomas & Betts first adopted the Oval-Head Trade Dress.

29. Upon information and belief, Fengfan manufactures and sells to 3M the oval-head cable ties that 3M then promotes and sells under the 3M$^{TM}$ Steel-Barbed Cable Tie brand.

30. Defendants' use of the confusingly similar oval-head configuration with its cable ties is likely to cause confusion, mistake, and deception among the relevant consuming public. Consumers will likely believe that Defendants' cable ties are in some way associated with or connected with, or approved or authorized by, Thomas & Betts, or that Defendants' cable ties otherwise originate from the same source as Thomas & Betts's, when that is not the case.

31. Upon information and belief, Defendants have manufactured and sold the confusingly similar cable ties having an oval head with actual knowledge of Thomas & Betts's Oval-Head Trade Dress. Thomas & Betts did not authorize Defendants' manufacture or sale of cable ties with an oval-head configuration. On information and belief, Defendants intended to trade and capitalize on the goodwill generated by Thomas & Betts's Oval-Head Trade Dress.

32. Burndy and Hubbell falsely claim that the white/natural UNIRAP cable ties are resistant to ultraviolet (UV) light. *See* Exhibit J. Upon information and belief, this

representation is literally false or at least misleading and misstates the characteristics and quality of the white/natural UNIRAP cable ties.

33. Burndy's and Hubbell's false or misleading statements have had or will have a material effect on the purchasing decisions of potential buyers of cable ties.

34. Burndy's and Hubbell's false or misleading statements have injured and are likely to injure Thomas & Betts.  In particular, if Burndy's and Hubbell's dissemination of this false claim continues, Burndy and Hubbell will benefit from the deception and Thomas & Betts will be harmed through lost sales, market share, price erosion, and goodwill that cannot readily be quantified or recaptured.  Accordingly, Thomas & Betts and the public have a strong interest in preventing further dissemination of false claims by Burndy and Hubbell.

35. All of the foregoing acts of Defendants have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury for which Thomas & Betts has no adequate remedy at law.

## COUNT I
## UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT
### (Against All Defendants)

36. As its first ground for relief, Thomas & Betts hereby alleges federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Thomas & Betts repeats and realleges the allegations of paragraphs 1 through 35 above, as though fully set forth herein.

37. Defendants' use of an oval-head configuration in connection with its cable ties constitutes use of a false designation of origin in interstate commerce, in violation of Thomas & Betts's rights in its distinctive Oval-Head Trade Dress.  Defendants' use of the Oval-Head Trade Dress wrongfully and falsely designates, describes, or represents Defendants' products, causing

confusion, mistake, and deception as to the affiliation, connection, or association of Defendants' cable ties with Thomas & Betts, or as to the sponsorship or approval of said products by Thomas & Betts. Defendants have caused such goods to enter into commerce with full knowledge of the falsity of these representations.

38. Defendants' acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Thomas & Betts, for which Thomas & Betts has no adequate remedy at law.

## COUNT II
## FALSE ADVERTISING UNDER SECTION 43(a) OF THE LANHAM ACT
### (Against Burndy and Hubbell)

39. As its second ground for relief, Thomas & Betts hereby alleges federal false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Thomas & Betts repeats and realleges the allegations of paragraphs 1 through 38 above, as though fully set forth herein.

40. Burndy and Hubbell have made and are making false or misleading representations of fact regarding the ultraviolent (UV) resistance of their white/natural UNIRAP cable ties in connection with the sale or offering for sale of such products. Defendants have made such representations with full knowledge of their falsity.

41. Burndy's and Hubbell's representations have had or will have a material effect on the purchasing decisions of customers.

42. Burndy's and Hubbell's acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause, serious and irreparable injury to Thomas & Betts, for which Thomas & Betts has no adequate remedy at law.

## COUNT III
## UNFAIR COMPETITION UNDER TENNESSEE STATE LAW

**(Against All Defendants)**

43. As its third ground for relief, Thomas & Betts hereby alleges deceptive trade practices and fraudulent misrepresentation under Tennessee Code Ann. § 47-18-104 et seq. Thomas & Betts repeats and realleges the allegations of paragraphs 1 through 42 above, as though fully set forth herein.

44. Defendants' use of the Oval-Head Trade Dress in connection with their cable ties creates the unreasonable risk that consumers will conclude that there exists some affiliation, connection, or association between and among Thomas & Betts and Defendants.

45. The natural and probable effect of Defendants' use of the Oval-Head Trade Dress in the manner alleged is to enable Defendant to deceive and confuse the public. Upon information and belief, Defendants had actual knowledge of Thomas & Betts's rights at the time they decided to use the Oval-Head Trade Dress in connection with their cable ties. Thus, Defendants willfully and deliberately infringed Thomas & Betts's rights.

46. Upon information and belief, Defendants' unfair business practices are of a recurring nature and are harmful to the consumers and the public at large, as well as to Thomas & Betts. These practices constitute unlawful, unfair, fraudulent, and deceptive business practices and unfair, deceptive, untrue, and misleading advertising.

47. Defendants have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Thomas & Betts, for which Thomas & Betts has no adequate remedy at law.

## COUNT IV
## FALSE ADVERTISING UNDER TENNESSEE STATE LAW
**(Against Burndy and Hubbell)**

48. As its fourth ground for relief, Thomas & Betts hereby alleges false advertising

under Tennessee Code Ann. § 47-18-104 et seq. Thomas & Betts repeats and realleges the allegations of paragraphs 1 through 47 above, as though fully set forth herein.

49. Burndy and Hubbell have made and are making false or misleading representations of fact regarding the ultraviolent (UV) resistance of the white/natural UNIRAP cable ties in connection with the sale or offering for sale of such products.

50. The natural and probable effect of Burndy's and Hubbell's false and misleading statements in the manner alleged is to enable Burndy and Hubbell to deceive and confuse the public.

51. Upon information and belief, Burndy's and Hubbell's false advertising is of a recurring nature and is harmful to the consumers and the public at large, as well as to Thomas & Betts. These practices constitute unlawful, unfair, fraudulent, and deceptive business practices and unfair, deceptive, untrue, and misleading advertising.

52. Burndy and Hubbell have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Thomas & Betts, for which Thomas & Betts has no adequate remedy at law.

## TRIAL BY JURY

53. Thomas & Betts hereby requests trial by jury on all issues wherein trial by jury is permissible.

## **PRAYER FOR RELIEF**

WHEREFORE, Thomas & Betts prays that this Court enter a judgment and order:

1. That Defendants' use of an oval-head configuration with their cable ties violates § 43(a) of the Lanham Act and constitutes deceptive trade practices and fraudulent misrepresentation under Tennessee Code Ann. § 47-18-104 et seq.;

2. That Burndy's and Hubbell's statements that their white/natural UNIRAP cable ties are resistant to ultraviolet (UV) light violates § 43(a) of the Lanham Act and constitutes deceptive trade practices and fraudulent misrepresentation under Tennessee Code Ann. § 47-18-104 et seq.;

3. That Defendants and their respective officers, agents, servants, employees, attorneys, and all those in active concert or participation with them, be preliminarily and permanently enjoined from:

    A. Using the Oval-Head Trade Dress in connection with any cable tie product or any other head configuration that is likely to cause confusion, mistake, or deception with respect to Thomas & Betts's Oval-Head Trade Dress;

    B. Doing any other act or thing likely to induce the mistaken belief that Defendants' products are in any way affiliated, connected, or associated with Thomas & Betts or its products, or doing any other act or thing likely to cause confusion with respect to Thomas & Betts's Oval-Head Trade Dress;

    C. Injuring Thomas & Betts's business reputation and the goodwill associated with the Oval-Head Trade Dress, and from otherwise unfairly competing with Thomas & Betts in any manner whatsoever; and

    D. With regard to Burndy and Hubbell, making any statements regarding their white/natural UNIRAP cable ties being resistant to ultraviolet (UV) light;

4. That, pursuant to 15 U.S.C. § 1118, Defendants be ordered to deliver up for destruction all cable ties and related materials, including but not limited to brochures, advertisements, promotions and all other matter in the custody or under the control of Defendants utilizing or bearing an oval-head configuration.

5. That Defendants be ordered to recall from all their manufacturers, distributors and agents, all cable ties and related materials, including but not limited to, brochures, advertisements, promotions and all other matter utilizing or bearing cable ties with the an oval-head configuration.

6. That Thomas & Betts be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

   A. All profits received by Defendants from sales and revenues of any kind received in connection with cable ties utilizing an oval-head configuration;

   B. All damages sustained by Thomas & Betts as a result of Defendants' acts of unfair competition and false advertising and that such damages be trebled; and

   C. All damages, compensatory and punitive, arising from Defendants' deliberate infringing actions as permitted under Tennessee law.

7. That Defendants be ordered to compensate Thomas & Betts in an amount that would enable it to conduct corrective advertising reasonably calculated to remedy any consumer confusion created as a result of Defendants' unlawful actions.

8. That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve upon Thomas & Betts within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

      9.      That, because of the exceptional nature of this case resulting from Defendants' deliberate unlawful actions, this Court award Thomas & Betts its reasonable attorneys' fees, costs and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. § 1117.

      10.     That Thomas & Betts have such other and further relief as this Court may deem just.

April 25, 2014                       Respectfully submitted,

                                     BUTLER SNOW LLP

                                     /s/ Amy M. Pepke
                                     Amy M. Pepke
                                     Butler Snow LLP
                                     P.O. Box 171443
                                     Memphis, Tennessee 38187-1443
                                     (901) 608-7200

                                   Thomas G. Pasternak (pro hac vice application pending)
                                   Thomas L. Holt (pro hac vice application pending)
                                   Amanda K. Streff (pro hac vice application pending)
                                   Steptoe & Johnson LLP
                                   115 South LaSalle, Suite 3100
                                   Chicago, Illinois 60603
                                   (312) 577-1300

                                   *ATTORNEYS FOR PLAINTIFFS THOMAS & BETTS INTERNATIONAL LLC and THOMAS & BETTS CORPORATION*

ButlerSnow 20928830v1